

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. 1:11cr199 |
| | ) Hon. James C. Cacheris |
| v. | ) |
| | ) |
| EDWARD MACAULEY, | ) Count One – Conspiracy to Import Heroin |
| a/k/a "Cudjoe Opoku," | ) (21 U.S.C. § 963) |
| (Counts 1-4) | ) |
| | ) |
| NURU [Last Name Unknown], | ) Count Two – Distribution for Purpose of |
| a/k/a "Ohehe" | ) Unlawful Importation of Heroin |
| (Counts 1-4) | ) (21 U.S.C. §§ 959 (a) & 960) |
| | ) |
| FRANK EHIOBE, | ) |
| (Counts 1 & 4) | ) Count Three – Distribution for Purpose of |
| | ) Unlawful Importation of Heroin |
| FRED OPPONG BROBBEY, | ) (21 U.S.C. §§ 959 (a) & 960) |
| (Counts 1, 3 & 4) | ) |
| | ) |
| WILLIAM ANDOH, | ) Count Four – Distribution for Purpose of |
| a/k/a "Willie," | ) Unlawful Importation of Heroin |
| (Counts 1, 3 & 4) | ) (21 U.S.C. §§ 959 (a) & 960) |
| | ) |
| THEOPHILUS AKWEI, | ) |
| (Counts 1, 4 & 5) | ) Count Five – Possession with Intent |
| | ) To Distribute Heroin |
| JOSEPH DUODO, and | ) (21 U.S.C. § 841) |
| (Counts 1, 4 & 5) | ) |
| | ) |
| MATILDA ANTWI, | ) Forfeiture Notice |
| (Counts 1 & 2) | ) (21 U.S.C. §§ 853 & 970) |
| | ) |
| Defendants | ) |

# INDICTMENT

April 2011 Term – At Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

GENERAL ALLEGATIONS

1. EDWARD MACAULEY, a/k/a. "Cudjoe Opoku," is a resident of Ghana. MACAULEY is a leader of a Ghana-based heroin trafficking organization and is responsible for importing into the United States multiple kilograms of heroin. The MACAULEY organization uses couriers aboard commercial airlines to smuggle heroin from Ghana to the United States.

2. NURU [Last Name Unknown], a/k/a "Ohehe," is a resident of Ghana. NURU arranges for and uses couriers in Ghana to transport heroin from Ghana to the United States. NURU sought and obtained MACAULEY's permission to use a courier to transport heroin from Ghana to the United States.

3. FRANK EHIOBE is a resident of Ghana. EHIOBE arranges for and uses couriers in Ghana to transport heroin from Ghana to the United States. EHIOBE sought and obtained MACAULEY's permission to use a courier to transport heroin from Ghana to the United States.

4. FRED OPPONG BROBBEY is a resident of Ghana. BROBBEY is skilled at concealing heroin in suitcases used by MACAULEY organization couriers to transport heroin into the United States. BROBBEY also concealed heroin in suitcases used by a courier for NURU and EHIOBE that was transported to the United States.

5. WILLIAM ANDOH, a/k/a "Willie," is a citizen of Ghana and a resident of New York. In or about December 2010, ANDOH was to receive a shipment of heroin from a courier who had been directed to ANDOH by MACAULEY. ANDOH distributes heroin within the New York, NY, and Baltimore, MD, metropolitan areas.

6. THEOPHILUS AKWEI is a citizen of Ghana and a resident of Maryland. In or about February 2011, AKWEI received a shipment of heroin from a courier who had been directed to him by EHIOBE.

7. JOSEPH DUODO is a citizen of Ghana and a resident of Maryland. In or about February 2011, DUODO received a shipment of heroin from a courier who had been directed to him by EHIOBE.

8. MATILDA ANTWI is a citizen of Ghana and a resident of Alexandria, Virginia, in the Eastern District of Virginia. ANTWI is a courier for the MACAULEY organization.

COUNT ONE

*Conspiracy to Import Heroin – 21 U.S.C. § 963*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations are incorporated here.

9.   From at least in or about September 2010 through at least February 2011, in the Eastern District of Virginia and elsewhere, the defendants,

> EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
> NURU, a/k/a "Ohehe,"
> FRANK EHIOBE,
> FRED OPPONG BROBBEY,
> WILLIAM ANDOH, a/k/a "Willie,"
> THEOPHILUS AKWEI,
> JOSEPH DUODO, and
> MATILDA ANTWI,

and others known and unknown to the Grand Jury, conspired and agreed to commit the following offenses against the United States:

   a.   Knowingly, intentionally, and unlawfully to import a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, into the United States from a place outside thereof, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) & 960(b)(1)(A);

   b.   Knowingly, intentionally, and unlawfully to bring and possess on board an aircraft arriving in the United States a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, not part of the cargo entered in the manifest or part of the official supplies of the aircraft, in violation of 21 U.S.C. §§ 955, 960(a)(2) & 960(b)(1)(A); and

  c. To distribute a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3) & 960(b)(1)(A).

10. In furtherance of this conspiracy and to accomplish its unlawful objects, the defendants and their co-conspirators committed the following overt acts in the Eastern District of Virginia and elsewhere:

### *The September 2010 Shipment of Heroin*

  a. In or about September 2010, ANTWI was introduced to MACAULEY by a co-conspirator. MACAULEY offered to pay ANTWI to smuggle heroin into the United States.

  b. In or about September 2010, MACAULEY met with ANTWI at a hotel in Accra, Ghana, and gave her a quantity of heroin for importation into the United States. MACAULEY also gave ANTWI the telephone number of an individual who would retrieve the heroin from her once she arrived in the United States.

  c. On or about September 4, 2010, ANTWI, while in possession of approximately 1.2 kilograms of heroin, attempted to depart Kotoka International Airport in Ghana on United Airlines flight number 991, which was bound for Dulles International Airport in the Eastern District of Virginia.

### *The November 2010 Shipment of Heroin*

  d. On or about November 4, 2010, in Accra, Ghana, MACAULEY provided a drug courier with a cell phone number to use to contact MACAULEY. Later that day, MACAULEY explained to the courier that there were no drug detection machines at the Kotoka

International Airport but that the arrangement of the drugs in the bags carried by the courier was important.

  e.  On or about November 10, 2010, MACAULEY arranged for NURU to meet the drug courier at MACAULEY's house in Accra, Ghana. NURU and the courier traveled from there to another location where they met BROBBEY who showed the courier a brown carry-on bag. NURU explained that the courier would be traveling with this bag and that it would contain drugs. NURU told the courier that BROBBEY had been designing drug courier bags for NURU and others for some time.

  f.  On or about November 19, 2010, MACAULEY met the drug courier at MACAULEY's house in Accra, Ghana. MACAULEY told the courier that the courier's trip to transport the drugs would occur before November 24, 2010. MACAULEY told the courier that MACAULEY could not purchase the courier's plane ticket because MACAULEY had tied up in the United States approximately $350,000 from the sale of drugs in the United States. When the courier asked MACAULEY for the courier's passport, MACAULEY told the courier to get it from NURU.

  g.  On or about November 20, 2010, MACAULEY met the drug courier at MACAULEY's house in Accra, Ghana. MACAULEY told the courier that the courier's trip to transport the drugs would occur on November 26, 2010. MACAULEY told the courier to call NURU to obtain the courier's passport.

  h.  On or about November 22, 2010, NURU met with the drug courier in Accra, Ghana, and told him that a reservation had been made for the courier on United Airlines

flight number 991 departing on November 27, 2010, and that the carry-on bag containing drugs would be given to him at the Kotoka International Airport.

    i.    On or about November 23, 2010, NURU and BROBBEY met with the drug courier in Accra, Ghana, and showed the courier the carry-on bag that would contain the drugs the courier was to transport.

    j.    On or about November 27, 2010, NURU purchased the ticket for the drug courier and told the courier to prepare to travel on November 28, 2010.

    k.    On or about November 28, 2010, NURU met with the drug courier and a co-conspirator at the Kotoka International Airport. The co-conspirator told NURU that it was safe for the courier to check in for the flight. Later that day, before boarding the aircraft, the courier was given the carry-on bag containing approximately 1.4 kilograms of heroin that the courier was to transport to Dulles International Airport.

    l.    On or about November 29, 2010, NURU called the drug courier shortly after the courier had arrived at Dulles International Airport. NURU told the courier that someone was waiting to pick the courier up. Later that day, NURU called the courier, who was in the Eastern District of Virginia, and told the courier to rent a hotel room where someone would come to pick up the heroin. Still later that day, NURU and a co-conspirator had several conversations with the courier by telephone concerning delivery of the heroin.

    m.    On or about November 30, 2010, MACAULEY spoke by telephone with the drug courier, who was in the Eastern District of Virginia, and discussed delivery of the heroin. Later that day, NURU called the courier to ask where the heroin was located. Still later that day, BROBBEY called the courier to discuss the delivery of the heroin.

n. On or about December 1, 2010, BROBBEY called the courier and told him to call the "boss," MACAULEY. BROBBEY told the courier that MACAULEY would send someone to pick up the heroin.

o. On or about December 2, 2010, BROBBEY called the courier to discuss the delivery of the heroin. BROBBERY told the courier that NURU could not pay him until NURU knew where the heroin was located.

p. On or about December 3, 2010, MACAULEY called the courier and gave him ANDOH's telephone number of (xxx) xxx-7658 so that the courier could call ANDOH and arrange delivery of the heroin. Thereafter, using telephone number (xxx) xxx-7658, ANDOH spoke with the courier regarding the delivery of the heroin.

q. On or about December 16, 2010, NURU spoke with the courier who told NURU that the heroin was stored in a locker in the United States and that the courier could give NURU the key to the locker. Later that day, MACAULEY asked the courier if he had the key to the locker in the United States.

*The February 2011 Shipment of Heroin*

r. On or about February 18, 2011, MACAULEY, EHIOBE, and a co-conspirator met with the courier at MACAULEY's house in Accra, Ghana. MACAULEY told EHIOBE that the courier was an associate of MACAULEY's and that he regarded the courier with confidence. MACAULEY, EHIOBE, and the courier also discussed that while the courier was in the United States in February transporting drugs, the courier could meet with an associate of MACAULEY's to deliver the November 2010 shipment of heroin. MACAULEY also called NURU to tell him that the courier would be traveling to the United States.

s.  On or about February 19, 2011, MACAULEY, BROBBEY, and other co-conspirators met with the courier in Accra, Ghana, and told him that a ticket had been purchased for him on United Airlines flight number 991 departing for Dulles International Airport on February 20, 2011, and that BROBBEY would make the carry-on bag for transporting the heroin.

t.  On or about February 20, 2011, after the courier had checked in for United Airlines flight number 991, an associate of EHIOBE's met with the courier at the Kotoka International Airport in Accra, Ghana, and gave the courier a carry-on bag containing approximately 989 grams of heroin, which was inside a hidden compartment of the bag.

u.  On or about the morning of February 21, 2011, after the courier had arrived at Dulles International Airport, EHIOBE called the courier and told him that EHIOBE would call the person the courier was to meet to deliver the heroin. Shortly thereafter, the courier received a text message from EHIOBE with the telephone number (xxx) xxx-0151. Later, the courier received several calls from a co-conspirator, "Senu," at telephone number (xxx) xxx-0151, and they discussed the delivery of the heroin. During the same time, EHIOBE and the courier spoke by telephone several times concerning the delivery of the carry-on bag containing the heroin to "Senu." Ultimately, "Senu" and EHIOBE each called the courier and told him that "Senu" would not meet with the courier.

v.  On or about the afternoon of February 21, 2011, MACAULEY called the courier and told him that MACAULEY would arrange to have someone pick up the carry-on bag containing the heroin if EHIOBE did not do so. Later, EHIOBE called the courier and told him that "Senu" was sending someone to pick up the carry-on bag. Shortly thereafter, a co-conspirator called the courier from telephone number (xxx) xxx-9361 and asked the courier for

the address of the hotel where the courier was staying. Still later, EHIOBE called the courier and told him that he had spoken to the co-conspirator and that the co-conspirator was on his way to pick up the carry-on bag.

 w. On or about the evening of February 21, 2011, DUODU drove with AKWEI to the hotel where the courier was staying. Shortly afterward, the co-conspirator called the courier from telephone number (xxx) xxx-9361 and told him that he had arrived at the hotel. DUODU and AKWEI met the courier in the car in the hotel parking lot and called EHIOBE to discuss the delivery of the heroin. Later, the courier came from his room at the hotel and placed the carry-on bag containing the heroin in the car being driven by DUODU. Still later, EHIOBE called the courier, and the courier told EHIOBE that he had delivered the heroin.

 x. On or about February 22, 2011, ANDOH called the courier and discussed the payment of the courier's expenses for transporting the heroin. ANDOH told the courier that he should ask MACAULEY for the money.

(In violation of Title 21, United States Code, Section 963.)

## COUNT TWO

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about September 4, 2010, in the Eastern District of Virginia and elsewhere, the defendants,

> EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
> NURU, a/k/a "Ohehe," and
> MATILDA ANTWI,

distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States. (In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(1)(A) and Title 18, United States Code, Section 2).

COUNT THREE

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about November 29, 2010, in the Eastern District of Virginia and elsewhere, the defendants,

> EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
> NURU, a/k/a "Ohehe,"
> FRED OPPONG BROBBEY, and
> WILLIAM ANDOH, a/k/a "Willie,"

distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States. (In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(1)(A) and Title 18, United States Code, Section 2).

COUNT FOUR

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about February 21, 2011, in the Eastern District of Virginia and elsewhere, the defendants,

>   EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
>   NURU, a/k/a "Ohehe,"
>   FRANK EHIOBE,
>   FRED OPPONG BROBBEY,
>   WILLIAM ANDOH, a/k/a "Willie,"
>   THEOPHILUS AKWEI, and
>   JOSEPH DUODO,

distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, 100 grams or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States.

(In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(2)(A) and Title 18, United States Code, Section 2).

COUNT FIVE

*Possession with Intent to Distribute Heroin – 21 U.S.C. § 841*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about February 21, 2011, in the Eastern District of Virginia and elsewhere, the defendants,

> THEOPHILUS AKWEI, and
> JOSEPH DUODO,

possessed with intent to distribute a schedule I controlled substance, that is, 100 grams or more of a mixture and substance containing a detectable amount of heroin.

(In violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(B)(i) and Title 18, United States Code, Section 2).

NOTICE

*Forfeiture – 21 U.S.C. §§ 853 & 970*

Pursuant to FED. R. CRIM. P. 32.2(a), the defendants are hereby notified that, if convicted of the offenses charged in this indictment, they shall forfeit to the United States any property constituting or derived from any proceeds the defendants and their co-conspirators obtained, directly or indirectly, as the result of such violations, or substitute assets therefor, up to and including a sum of money equal to $710,000 in United States currency, which includes the estimated U.S. value of the heroin, and any of the defendants' property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations. (Pursuant to Title 21, United States Code, Sections 853 and 970; Title 18, United States Code, Section 982; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.)

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
FOREPERSON

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
James P. Gillis
Assistant United States Attorney