IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:11cr199 |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD MACAULEY, | ) | AFFIDAVIT IN SUPPORT OF |
| a/k/a Cudjoe Opoku, | ) | REQUEST OF EXTRATDITION |
| NURU YAKUBU, | ) | |
| a/k/a Ohehe | ) | |
| FRANK EHIOBU, | ) | |
| FRED OPPONG BROBBEY, | ) | |
| MATILDA ANTWI | ) | |

## AFFIDAVIT

Anthony L. Conte, Special Agent, being duly sworn, says:

1.  I am a citizen of the United States, working in the Washington, D.C. area.

2.  I am a Special Agent employed by the United States Drug Enforcement

Administration (DEA), where I have been since February 2004. The DEA is one of the agencies

in the United States Government responsible for the enforcement of federal narcotics laws. As a

DEA Special Agent, I have personally conducted, supervised, and participated in numerous

investigations that led to the arrests and convictions of many drug traffickers.

3.  I am currently assigned to Group 11, at the Washington Division Office (WDO),

where my responsibilities include the investigation of violations of the Controlled Substance Act

and other drug-related offenses. I was previously a Virginia State Trooper for six years.

1

4.      Based on my training and experience as a DEA Special Agent, I have become familiar with the means and methods that narcotics traffickers use to import and distribute illicit drugs, and I am familiar with the support and assistance that narcotics organizations require to conduct their illegal activities.  I also have become knowledgeable about the criminal statues of the United States, particularly in the area of the criminal law regarding violations of the federal narcotics and conspiracy statutes.

5.      My duties as a Special Agent with the DEA have included the investigation of EDWARD MACAULEY, a/k/a "Cudjoe Opoku," NURU YAKUBU, a/k/a "Ohehe," a/k/a "Kofi Owusu," FRANK EHIOBU, FRED OPPONG BROBBEY, and MATILDA ANTWI, among others, all of whom are members of a heroin trafficking organization in Ghana, indicted in the case captioned United States v. Edward MaCauley, et al, Case No. 1:11cr199. EHIOBU's name is incorrectly spelled in the indictment as "Ehiobe" and was also incorrectly listed as "Ehiobe" in the request for provisional arrest.  William Andoh ("Andoh"), Theophilus Akwei ("Akwei"), and Joseph Duodo ("Duodo") are also charged in the indictment in various counts. As one of the investigators involved in the case, I am familiar with the evidence in the case.

Background

6.      The investigation, which began in approximately November 2010, has revealed that Edward MACAULEY is a leader of a heroin trafficking organization in Ghana. MACAULEY and his conspirators are responsible for transporting multiple kilograms of heroin from Ghana from at least September 2010 to the present, for importation and distribution in the United States. This investigation was conducted by the DEA, Immigration Custom Enforcement

2

(ICE), and the Special Investigation Unit (SIU) of the Ghana National Police and remains ongoing.

Summary of Evidence

7.     This summary of the evidence against MACAULEY and his co-conspirators is based on, but is not limited to, physical surveillance, information from confidential sources, lawfully made video and audio recordings of meetings and conversations with the defendants, lawfully intercepted telephone calls, consensually recorded telephone calls, and the seizure of heroin, documents, and other physical evidence.  I have designated in this summary how the evidence supports the respective counts in the indictment by captioning the paragraphs for the respective counts.  The voices of the defendants on the various recordings of telephone calls I will describe in this summary have been identified by an individual familiar with the voices of the defendants. Additionally, the heroin seized in each of these events I will discuss has been verified to be heroin by laboratory analysis.

8.     The evidence gathered to date has revealed that MACAULEY and his organization operates out of Ghana and uses couriers to transport kilograms of heroin on commercial airlines flights to the United States. The evidence shows that the heroin is concealed inside suitcases to avoid detection. The evidence further shows that the heroin is sold to customers in the United States.

**Count One and Two**

9.     On September 4, 2010, the Ghanaian government arrested ANTWI in possession of approximately 1.2 kilograms of heroin. ANTWI was attempting to depart Kotoka

3

International Airport on United Airlines flight number 991 to Dulles International Airport in the Eastern District of Virginia. ANTWI told Ghanaian Narcotic Control Board Agents that she was transporting the heroin for MACAULEY. ANTWI further told agents that she received the heroin from MACAULEY at a hotel in Accra. ANTWI explained that MACAULEY instructed her to call a cellular telephone number once she arrived in the United States and an individual would retrieve the heroin from her.

### Count One and Three

10.     In November 2010, an individual ("the individual") cooperating with law enforcement authorities reported to DEA agents in Ghana that MACAULEY had asked him/her to transport heroin from Ghana to the United States. This investigation was at all times coordinated by the DEA with law enforcement authorities in Ghana. On or about November 20, 2010, the individual met with MACAULEY and YAKUBU at MACAULEY's residence in Accra. During that meeting, MACAULEY, YAKUBU, and the individual discussed when he/she would travel to the United States with the heroin. This meeting was audio recorded and videotaped.

11.     On or about November 28, 2010, the individual met with YAKUBU. During the meeting, YAKUBU told the individual that he had purchased a United Airlines plane ticket for United Airlines flight number 991 departing that night and arriving at Dulles International Airport the next day. Also during the meeting, YAKUBU and BROBBEY showed the CS the suitcase that would contain the heroin he/she was going to transport. This meeting was audio recorded and videotaped. Later that night, YAKUBU met with the individual outside the Kotoka

4

International Airport. YAKUBU gave the individual the small black suitcase, which had on it an emblem of a horse and the words "Black Horse" in silver. The individual, together with a DEA agent, then boarded United Airlines flight number 991 and traveled to the United States.

12.     On November 29, 2010, the individual and the DEA agent arrived at Dulles International Airport and met with other law enforcement agents. The black suitcase was examined and found to contain approximately 1.4 kilograms of heroin concealed in a hidden compartment.

13.     After arriving at Dulles on November 29, 2010, the individual placed telephone calls to and received telephone calls from MACAULEY, YAKUBU, and BROBBEY. During these calls, which were recorded in the United States, MACAULEY, YAKUBU, BROBBEY, and the individual discussed the delivery of the heroin.

14.     On December 3, 2010, the individual called MACAULEY to tell him that the person who was to pick up the heroin did not arrive. During this recorded conversation, MACAULEY directed the individual to call cellular telephone number (347) 448-7658 and to speak to "Willie." MACAULEY instructed the individual to give the heroin to "Willie." Law enforcement agents later determined that this telephone number belonged to Andoh.

15.     The individual then called the (347) 448-7658 telephone number and spoke to Andoh. During this recorded conversation, the individual and Andoh discussed how the individual would travel to New York, New York, to deliver the heroin. Ultimately, however, the heroin was not delivered by the individual; rather, at the direction of the DEA, the individual told MACAULEY that he had placed the heroin in a storage locker in Virginia.

5

### Count One and Four

16.     On or about February 18, 2011, the individual met with EHIOBU in Accra, Ghana. During this meeting, EHIOBU discussed having the individual transport a kilogram of heroin from Ghana to the United States. EHIOBU told the individual that MACAULEY approved this trip. Also during this meeting, EHIOBU purchased a ticket for United Airlines flight number 991 departing Kotoka International Airport on February 20, 2011, and arriving at Dulles International Airport on February 21, 2011. This meeting was audio recorded and videotaped.

17.     Later on February 18, 2011, the individual met with MACAULEY, EHIOBU, and BROBBEY at MACAULEY's residence. According to the individual, MACAULEY gave EHIOBU approval for the trip and instructed the individual to deliver the heroin from the storage locker to another person in the United States. This was the heroin that was previously seized by the DEA that is discussed in this affidavit in the summary of the evidence for Count Two of the indictment.

18.     On February 20, 2011, after checking in for United Airlines flight number 991, the individual met with an unknown associate of EHIOBU in the parking lot of the Kotoka International Airport. During that meeting, this person who we were not able to identify, provided the individual with a small blue suitcase and with some money for travel expenses. This meeting was audio recorded and videotaped. The individual, together with a DEA agent, then boarded United Airlines flight number 991 and traveled to the United States.

6

19.     On February 21, 2011, the individual and the DEA agent arrived at Dulles International Airport and met with law enforcement agents. The small blue suitcase was examined and found to contain just under one kilogram of heroin concealed in a hidden compartment. The concealment and the packaging of the heroin was identical to that found in the black suitcase on November 29, 2010.

20.     After arriving at Dulles on February 21, 2011, the individual placed telephone calls to and received telephone calls from EHIOBU. During these calls, which were recorded in the United Staes, EHIOBU gave the individual instructions pertaining to the delivery of the heroin. During one of the telephone conversations, EHIOBU instructed the individual to rent a hotel room. EHIOBU told the individual that once he/she rented the room someone would arrive and pick up the heroin.

21.     The individual then called EHIOBU and told him that he/she was staying at the Hilton Hotel on Seminary Road, in Alexandria, Virginia, in the Eastern District of Virginia. Shortly thereafter, the individual received a call from telephone number (240) 217-9361, which law enforcement agents later determined belonged to Duodo. Duodo asked the individual for the name, location, and telephone number of the hotel. At approximately, 7:15 p.m., on February 21, 2011, a DEA task force officer observed a burgundy Nissan Altima with a Maryland license plate number registered to Duodo arrive in front of the hotel. The DEA task force officer then observed the individual exit the hotel and entered the back seat of the Altima and meet with two other persons who were later identified as Akwei and Duodo. During this meeting, which was

7

audio recorded, the individual place a telephone call to EHIOBU who confirmed that the individual should give Akwei and Duodo the heroin.

22.     The DEA task force officer saw the individual leave the vehicle and return to the hotel, where a DEA agent provided the individual with the small blue suitcase containing the heroin. Next, agents observed the individual as he/she returned to the front of the hotel where the individual again approached the burgundy Nissan Altima. The DEA task force officer saw the individual open the rear driver's side door and place the small blue suitcase in the vehicle. Once the vehicle departed the hotel, agents followed the vehicle until Officers from the Alexandria City Police Department conducted a traffic stop of the vehicle in the City of Alexandria. Akwei and Duodo were then arrested.

23.     On February 22, 2011, the individual received telephone calls from EHIOBU. During these recorded conversations, EHIOBU told the individual that Akwei and Duodo had been arrested. The individual also received telephone calls from Andoh which were intercepted by the DEA New York Division Office conducting a court authorized interception of Andoh's cellular telephone. During these recorded conversations, the individual and Andoh discuss Akwei and Duodo being arrested. Andoh also discussed with the individual the heroin that was previously transported by the individual and MACAULEY'S role in the heroin deliveries.

Identification

24.     EDWARD MACAULEY, a/k/a "Cudjoe Opoku, is a Ghanaian citizen, born on September 20, 1949, in Ghana. He is described as a black male, standing approximately five feet, ten inches in height, with black hair and brown eyes. I have attached respectively as

8

**Attachment 1a** and **1b** a surveillance photograph taken of MACAULEY during the investigation, as well as a photograph taken of him when he was provisionally arrested. The CS has been shown **Attachment 1a** and has identified this photograph as being of MACAULEY. According to law enforcement officers who conducted the physical surveillance of MACAULEY during the investigation, the photograph at **Attachment 1a** is of the same person who was arrested in Ghana pursuant to a provisional arrest warrant in this case.

25.    FRANK EHIOBU is a Nigerian citizen, born on June 20, 1963 or June 20, 1964, in Nigeria. At the time of the request for provisional arrest his dates of birth were believed to be either October 3, 1952 or October 3, 1956. He is described as a black male, standing approximately six feet, one inch in height, with black hair and brown eyes. I have attached respectively as **Attachment 2a** and **2b** a surveillance photograph taken of EHIOBU during the investigation, as well as a photograph taken of him when he was provisionally arrested. The CS has been shown **Attachment 2a** and has identified this photograph as being of EHIOBU. According to law enforcement officers who conducted the physical surveillance of EHIOBU during the investigation, the photograph at **Attachment 2a** is of the same person who was arrested in Ghana pursuant to a provisional arrest warrant in this case.

26.    FRED OPPONG BROBBEY is a Ghanaian citizen, born on October 6, 1961, in Ghana. He is described as a black male, standing approximately five feet, seven inches in height, with black hair and brown eyes. I have attached respectively as **Attachment 3a** and **3b** a surveillance photograph taken of BROBBEY during the investigation, as well as a photograph taken of him when he was provisionally arrested. The CS has been shown **Attachment 3a** and has identified this photograph as being of BROBBEY. According to law enforcement officers

9

who conducted the physical surveillance of BROBBEY during the investigation, the photograph

at **Attachment 3a** is of the same person who was arrested in Ghana pursuant to a provisional

arrest warrant in this case.

27.    MATILDA ANTWI is a Ghanaian citizen, born on September 2, 1982, in Ghana.

She is described as a black female, standing approximately five feet, two inches in height, with

black hair and brown eyes.  A copy of ANTWI's Virginia Driver's license photograph is attached

as **Attachment 4**.  A law enforcement officer involved in ANTWI's arrest for heroin trafficking

in Ghana has identified **Attachment 4** as being of ANTWI.  ANTWI has been in the custody of

authorities in Ghana since her arrest for heroin trafficking on September 4, 2010.

28.    NURU YAKUBU, a/k/a "Ohehe," a/k/a "Kofi Owusu,"is a Ghanaian citizen, born on

April 4, 1977, in Ghana.  He is described as a black male, standing approximately five feet, nine

inches in height, with black hair and brown eyes.  I have attached as **Attachment 5** a surveillance

photograph taken of YAKUBU during the investigation. The CS has been shown **Attachment 5**

and has identified this photograph as being of YAKUBU.   YAKUBU has not been arrested at

this time.

Anthony L. Conte
Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me
this 5th day of August, 2011.

HON. IVAN D. DAVIS
United States Magistrate Judge

10

# ATTACHMENT
# 1a



# ATTACHMENT
# 1b



# ATTACHMENT
# 2a



# ATTACHMENT
# 2b



# ATTACHMENT
# 3a



# ATTACHMENT
# 3b



# ATTACHMENT
# 4



# ATTACHMENT
# 5

