IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED

AUG 5 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11cr199 |
| | ) | |
| EDWARD MACAULEY | ) | |
| NURU | ) | |
| FRANK EHOIBE | ) | |
| FRED OPPONG BROBBEY | ) | |
| MATILDA ANTWI | ) | |

## AFFIDAVIT

James P. Gillis, being duly sworn, says:

1.      I am a citizen of the United States of America, working in Alexandria, Virginia.

2.      I have been a federal prosecutor since August 1991, and am currently an Assistant United States Attorney in the National Security and International Crimes Unit of the U.S. Attorney's Office in the Eastern District of Virginia.

3.      As an Assistant United States Attorney for the Eastern District of Virginia, my duties include the prosecution of persons charged with violations of federal criminal laws, including individuals involved in significant drug trafficking organizations. I have prosecuted hundreds of cases as a federal prosecutor. Based on my training and experience, I am an expert in the criminal laws and procedures of this District and of the United States.

4.      In the course of my official duties I have become familiar with the charges and evidence in the case against EDWARD MACAULEY, a/k/a "Cudjoe Opoku," ("MACAULEY"); NURU YAKUBU, a/k/a "Ohehe," a/k/a "Kofi Owusu," ("YAKUBU"); FRANK EHIOBU, a/k/a "Frank Ehiobe" ("EHIOBU"); FRED OPPONG BROBBEY ("BROBBEY"), and MATILDA

ANTWI ("ANTWI"), among others, entitled *United States v. Edward Macauley, et al*, Case No. 1:11cr199. EHIOBU's name is incorrectly spelled in the indictment and arrest warrant and was also incorrectly listed as Ehiobe in the request for provisional arrest. This misspelling does not effect the validity of the indictment or the arrest warrant. This case arose out of an investigation of these defendants and other members of a drug trafficking organization who distributed heroin in the United States.

## THE CHARGES AND PERTINENT UNITED STATES LAW

5.      Under United States law, a criminal prosecution may be commenced by a grand jury on its own decision to return and file an indictment with the Clerk of the United States District Court. A grand jury is composed of not less than 16 people whom the United States District Court selects at random from the residents of the Eastern District of Virginia. The grand jury is an independent body empaneled by the Court. The purpose of the grand jury is to view the evidence of crimes presented to it by the United States law enforcement authorities. After independently viewing this evidence, each member of the grand jury must determine if there is probable cause to believe that a crime has been committed and that the particular defendant or defendants committed the crime. After at least 12 jurors affirmatively vote that the defendant committed the crime or crimes, the grand jury may return an indictment. An indictment is a document which formally charges the defendant with a crime or crimes, describes the specific laws which the defendant is accused of violating, and describes the acts of the defendant that are alleged to be violations of the law. After the grand jury returns the indictment, a warrant for the defendant's arrest is issued at the discretion of a United States District Court Judge or Magistrate Judge.

6.     On April 28, 2011, a federal grand jury sitting in the Eastern District of Virginia

returned and filed an indictment against MACAULEY, YAKUBU, EHIOBU, BROBBEY, and

ANTWI, charging them with:

> **Count One**: Conspiracy to commit various heroin trafficking offenses from on or
> about September, 2010, through at least February, 2011, in violation of Title 21,
> United States Code, and Section 963 (all of these defendants);
>
> **Count Two**: Distribution of one kilogram or more of heroin on or about
> September 4, 2010, intending and knowing that the heroin would be unlawfully
> imported into the United States, in violation of Title 21, United States Code,
> Sections 959(a), 960(a)(3), 960(b)(1)(A), and Title 18, United States Code,
> Section 2 (MACAULEY, YAKUBU, and ANTWI);
>
> **Count Three**: Distribution of one kilogram or more of heroin on or about
> November 29, 2010, intending and knowing that the heroin would be unlawfully
> imported into the United States, in violation of Title 21, United States Code,
> Sections 959(a), 960(a)(3), 960(b)(1)(A), and Title 18, United States Code,
> Section 2 (MACAULEY, YAKUBU, and BROBBEY); and
>
> **Count Four**: Distribution of more than one hundred grams of heroin on or about
> February 21, 2011, intending and knowing that the heroin would be unlawfully
> imported into the United States, in violation of Title 21, United States Code,
> Sections 959(a), 960(a)(3), 960(b)(2)(A), and Title 18, United States Code,
> Section 2 (MACAULEY, YAKUBU, EHIOBU, and BROBBEY).

Heroin is a schedule I controlled substance pursuant to Title 21, United States Code, Section 812.

The offenses are detailed in the indictment which is attached as **Exhibit A**.

7.     The indictment includes a notice of forfeiture in which the United States seeks

forfeiture of the proceeds of the crimes and property used to facilitate the commission of the

crimes, or the forfeiture of substitute property if the proceeds and property are no longer

available. Although this forfeiture notice is included in the indictment, forfeiture is not a

separate criminal offense. The listing of a forfeiture allegation in the indictment is a way to give

the defendants notice that the government is seeking forfeiture of certain property.

8.      William Andoh ("Andoh"), Theophilus Akwei ("Akwei"), and Joseph Duodo ("Duodo") are also charged in the indictment in various counts, including Count Five which alleges the distribution of heroin. Andoh, Akwei, and Duodo have been arrested in the Eastern District of Virginia and are pending trial. MACAULEY, EHIOBU, and BROBBEY are in custody in Ghana pursuant to a request by the United States for their provisional arrest. ANTWI has been in the custody of authorities in Ghana since her arrest for heroin trafficking on September 4, 2010. YAKUBU is a fugitive and is believed to be in Ghana. YAKUBU is identified in the indictment only as NURU since his last name was not known at the time of the indictment. NURU has subsequently been identified as NURU YAKUBU, a/k/a "Ohehe," a/k/a "Kofi Owusu."

9.      It is the practice of the United States District Court for the Eastern District of Virginia to retain the original of the indictment and file it with the records of the court. Original arrest warrants are sent by the Clerk of the Court to the United States Marshals Service for retention until the warrants are executed. The Clerk of the Court retains true and accurate copies of the original arrest warrants and is authorized to provide certified copies as needed. Therefore, I have obtained certified true and accurate copies of the indictment and arrest warrants for MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI from the Clerk of the Court, and have appended them to this affidavit as **Exhibit A** and respectively **Exhibits B-1** through **B-5**.

10.      The indictment and arrest warrants reflect that they are sealed. I have obtained an order from the Court authorizing the release of copies of the indictment and arrest warrants in support of this request for extradition. These certified copies of the arrest warrants contain stamps stating that they are information copies and should be validated by the original held by

-4-

the United States Marshal. This language is included on all certified copies of arrest warrants in the Eastern District of Virginia and does not effect the validity of the arrest warrants. The arrest warrants attached to my affidavit remain valid and executable to apprehend MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI for the charges in the indictment.

## DISCUSSION OF THE ELEMENTS OF THE CRIMES

11.   MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI are charged along with their co-conspirators in Count One of the indictment with conspiracy to commit various heroin trafficking crimes, in violation of Title 21, United States Code, Section 963. The crimes that were the goal of the conspiracy were: 1) the importation of heroin into the United States, in violation of Title 21, United States Code, Sections 952, 960(a)(1), and 960(b)(1)(A); 2) the bringing onto and possession of heroin on board an aircraft arriving in the United States, in violation of Title 21, United States Code, Sections 955, 960(a)(2), and 960(b)(1)(A); and 3) the distribution of heroin intending and knowing that it would be imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), and 960(b)(1)(A).

12.   Under United States law, a conspiracy is simply an agreement to violate other criminal statutes, in this instance the laws prohibiting the importation of heroin. In other words, under United States law, the act of combining and agreeing with one or more persons to violate United States law is a crime in and of itself. Such an agreement need not be formal, and may be simply a verbal or non-verbal understanding. A conspiracy is deemed to be a partnership for criminal purposes in which each member or participant becomes the agent or partner of every other member.

13.     To prove the conspiracy charge, the United States must show that MACAULEY,

YAKUBU, EHIOBU, BROBBEY, and ANTWI, together or separately, came to an agreement

with one or more persons to accomplish a common and unlawful plan, as charged in the

indictment, and, as to each, that he or she knowingly and willfully became a member of the

conspiracy. A defendant need not be aware of all of the acts of his co-conspirators in order to be

held liable for these acts, provided that he is a knowing member of the conspiracy, and the acts of

the co-conspirators were foreseeable and within the scope of the conspiracy. A person may

become a member of a conspiracy without full knowledge of all the details of the unlawful

scheme or the names and identities of all of the other alleged conspirators. Accordingly, if a

defendant has an understanding of the unlawful nature of a plan and knowingly and willfully

joins in that plan on one occasion, that is sufficient to convict him or her for conspiracy even if

he or she had not participated before and even if he played only a minor part.

14.     Specifically, as to the drug trafficking conspiracy alleged in Count One, the

United States must show that MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI

knowingly reached an agreement to either (a) import heroin into the United States, (b) to bring

heroin on board an aircraft arriving in the United States, and/or (c) to distribute heroin intending

it to be unlawfully imported into the United States.    There is no requirement under the law of

the United States that the government prove the defendants agreed to commit each of these

crimes, since proof of an agreement to commit any of the three crimes alleged to be a goal of the

conspiracy is sufficient. Additionally, the conspiracy charges alleges that the defendants

committed various overt acts in furtherance of the conspiracy. The law of the United States does

not require proof of an overt act to secure a conviction for a drug trafficking conspiracy.   The

-6-

agreement itself is sufficient to permit conviction for such a conspiracy. The overt acts are alleged in the indictment to provide further notice to the defendants as to the nature and scope of the alleged conspiracy.

15.     The elements of the first object of the conspiracy are that the defendants imported heroin into the United States from Ghana and that the defendants knew or intended that the substance was heroin. The elements of the second object of the conspiracy are that the defendants brought or possessed on board an aircraft heroin and that the defendants knew that the substance was heroin. The elements of the third object of the conspiracy, which is also charged as a substantive crime in Courts Two through Four, are that the defendants named in those counts of the indictment distributed heroin intending and knowing that it would be unlawfully imported into the United States.

16.     The punishment for drug offenses is based on the quantity of drugs involved in the offenses. In this case the quantity of drugs is alleged to be one kilogram or more of heroin as to Count One, Two, and Three, which invokes the penalty provision of Title 21, United States Code, Section 960(b)(1)(A). The maximum penalty for Counts One through Three is the same as to each count: a term of up to life imprisonment pursuant to Title 21, United States Code, Sections 959(a) and 960(b)(1)(A) and 963. The quantity of drugs alleged in Count Four is more than 100 grams of heroin which invokes the penalty provision of Title 21, United States Code, Sections 959(a) and 960(b)(2)(A). The maximum penalty for Count Four is a term of up to 40 years imprisonment pursuant to Title 21, United States Code, Sections 959(a) and 960(b)(2)(A).

17.     Counts Two through Four also charge that MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI were principals in the commission of the offenses by aiding and

abetting those offenses, as provided by Title 18, United States Code, Section 2. Title 18, United States Code, Section 2 states that whoever commands, procures, assists in, or causes the commission of a crime shall be held accountable and punished in the same manner as the principal, or the person who actually carried out the task. This means that the guilt of a defendant may also be proved even if he did not personally perform every act involved in the commission of the crime charged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort. So, if the acts or conduct of an agent, employee, or other associate of the defendant were willfully directed or authorized by the defendant, or if the defendant aided and abetted another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant had engaged in the conduct himself.

18.     The relevant portions of the statutes cited above are attached to this affidavit as **Exhibit C.** Each of these statutes was duly enacted and in force at the time the offenses was committed and at the time the indictment was returned, and they remain in full force and effect. Violations of the drug trafficking statutes charged in the indictment are each a felony under the laws of the United States.

19.     The statute of limitations for prosecuting the crimes charged in the indictment is governed by Title 18, United States Code, Section 3282, the relevant text of which is included in **Exhibit C.** The statute of limitations merely requires that a defendant be formally charged within five years of the date that the offense or offenses were committed. Once an indictment

-8-

has been filed in a federal district court, as with this charges against MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI, the statute of limitations is tolled and no longer runs. This prevents a criminal from escaping justice by simply fleeing apprehension and remaining a fugitive for an extended period of time. Moreover, under the laws of the United States, the statute of limitations for a continuing offense, such as conspiracy, begins to run upon the conclusion of the conspiracy, not upon the commencement of the conspiracy.

20.     I have thoroughly reviewed the applicable statute of limitations, and the prosecution of the charges in this case is not barred by the statute of limitations. Because the applicable statute of limitations is five years and as the indictment, which charges criminal violations occurring from in or about September 2010 and continuing until in or about February 2011, was filed on April 26, 2011, MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI were formally charged within the specified period. Therefore, the prosecution of the charges in this case is not barred by the statute of limitations.

21.     The United States expects to prove its case against MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI through eyewitness testimony and the use of physical evidence, as summarized below.

### SUMMARY OF THE FACTS AND EVIDENCE OF THE CASE

22.     On September 4, 2010, agents from the Ghanaian Narcotic Control Board ("GNCB") arrested ANTWI in possession of approximately 1.2 kilograms of heroin. ANTWI had the heroin concealed on her body and in her hair. ANTWI was attempting to depart Kotoka International Airport on a United Airlines flight to Dulles International Airport, which is in the Eastern District of Virginia. ANTWI told GNCB agents that she was transporting the heroin for

-9-

MACAULEY. ANTWI further told the GNCB agents that she received the heroin from

MACAULEY at a hotel in Accra, Ghana. ANTWI explained that MACAULEY instructed her to

call a cellular telephone number once she arrived in the United States and an individual would

retrieve the heroin from her. ANTWI also named YAKUBU as a drug trafficking associate of

MACAULEY. The substance was confirmed to be heroin by laboratory analysis in Ghana.

23.    After ANTWI's arrest, an individual approached GNCB agents and reported that

MACAULEY and members of his organization were using couriers on commercial airlines to

transport kilogram quantities of heroin on flights from Kotoka International Airport in Accra, to

Dulles International Airport. The GNCB and the U.S. Drug Enforcement Administration

("DEA") opened an investigation.

24.    In November 2010, the individual reported to DEA agents in Ghana that

MACAULEY had asked him/her to transport heroin from Ghana to the United States. On or

about November 20, 2010, the individual met with MACAULEY and YAKUBU at

MACAULEY's residence in Accra. During this meeting, MACAULEY, YAKUBU, and the

individual discussed when he/she would travel to the United States with the heroin. The

individual was under the supervision of law enforcement authorities. As part of this supervision,

the meeting was audio recorded and videotaped.

25.    On or about November 28, 2010, the individual met with YAKUBU. During the

meeting, YAKUBU told the individual that he had purchased a United Airlines ticket for a flight

departing that night and arriving at Dulles International Airport the next day. Also during the

meeting, YAKUBU and BROBBEY showed the individual the suitcase that would contain the

heroin he/she was going to transport. This meeting was audio recorded and videotaped as part of

the law enforcement agents' supervision of the individual. Later that night, YAKUBU met with the individual outside the Kotoka International Airport. YAKUBU gave the individual the small black suitcase. The individual, together with a DEA agent, then boarded the United Airlines flight and traveled to the United States. On November 29, 2010, the individual and the DEA agent arrived at Dulles International Airport and met with other law enforcement agents. The black suitcase was examined and found to contain approximately 1.4 kilograms of heroin concealed in a hidden compartment.

26.     After arriving at Dulles on November 29, 2010, the individual placed telephone calls to and received telephone calls from MACAULEY, YAKUBU, and BROBBEY. During these calls, which were recorded in the United States, MACAULEY, YAKUBU, BROBBEY, and the individual discussed the delivery of the heroin. Ultimately the heroin was not delivered to anyone and was seized by the DEA. The substance was confirmed to be heroin by laboratory analysis.

27.     On or about February 18, 2011, the individual met with EHIOBU in Accra. During this meeting, EHIOBU discussed having the individual transport a kilogram of heroin from Ghana to the United States. EHIOBU told the individual that MACAULEY approved the trip. Also during this meeting, EHIOBU purchased a ticket for a United Airlines flight from Kotoka International Airport on February 20, 2011, to Dulles International Airport on February 21, 2011. This meeting was audio recorded and videotaped as part of the investigation.

28.     Later on February 18, 2011, the individual met with MACAULEY, EHIOBU, and BROBBEY at MACAULEY's residence. According to the individual, MACAULEY gave EHIOBU approval for the trip and instructed the individual to deliver the heroin from a storage

-11-

locker to an individual in the United States. This was the heroin shipment that had been previously coordinated by YAKUBU. Also during that meeting, MACAULEY placed a telephone call to YAKUBU and advised him of the individual's forthcoming trip to the United States with more heroin.

29.     On February 20, 2011, after checking in for the United Airlines flight, the individual met with an unknown associate of EHIOBU in the parking lot of the Kotoka International Airport. During that meeting, the unknown associate provided the individual with a small blue suitcase and money for travel expenses. This meeting was audio recorded and videotaped as part of the investigation. The individual, together with a DEA agent, then boarded the flight to the United States.

30.     On February 21, 2011, the individual and the DEA agent arrived at Dulles International Airport and met with law enforcement agents. The small blue suitcase was examined and found to contain just under one kilogram of heroin concealed in a hidden compartment. The concealment and the packaging of the heroin was identical to that found in the black suitcase on November 29, 2010. After arriving at Dulles on February 21, 2011, the individual placed telephone calls to and received telephone calls from EHIOBU. During these calls, which were recorded, EHIOBU gave the individual instructions pertaining to the delivery of the heroin. During one of the telephone conversations, EHIOBU instructed the individual to rent a hotel room. EHIOBU told the individual that once he/she rented the room someone would arrive and pick up the heroin. The heroin was seized by the DEA. The substance was confirmed to be heroin by laboratory analysis.

31.     The individual has identified photographs of MACAULEY, , BROBBEY, and

EHIOBU as the men involved in the heroin trafficking organization.  ANTWI has been identified

by Ghanaian law enforcement authorities and a photograph of her is available.

### IDENTIFICATION

32.     MACAULEY is a citizen of Ghana born on September 20, 1949.  MACAULEY.

has a Ghanaian passport with number H1422420.  He is described as a black male, approximately

5 feet 10 inches tall, weighing approximately 198 pounds, with black hair and brown eyes.

33.     YAKUBU is a citizen of Ghana born on April 4, 1977.  He is described as a black

male, approximately 5 feet 9 inches tall, weighing approximately 165 pounds, with black hair

and brown eyes.

34.     BROBBEY is a citizen of Ghana and was born in Tema, Ghana on October 6,

1961.  He has a Ghanaian passport with number H1827679.  He is described as a black male,

approximately 5 feet 7 inches tall, weighing approximately 165 pounds, with black hair and

brown eyes.

35.     EHIOBU is a citizen of Nigeria and was born in Nigeria on June 20, 1963 or June

20, 1964.  His dates of birth were listed in the provisional arrest request as either October 3, 1952

or October 3, 1956.  He is described as a black male, approximately 6 feet 1 inches tall, with

black hair and brown eyes.

36.     ANTWI is a citizen of Ghana and was born in Kuna, Ghana on September 2,

1982.  She has a Ghanaian passport with number H2485817.  She is described as a black female,

approximately 5 feet 2 inches tall, with black hair and brown eyes.

37.     Photographs of each of these defendants is attached to the affidavit of DEA Special Agent Conte and made a part of this extradition request.  None of the defendants has been tried or convicted of the offenses charged in the indictment nor has he been sentenced to serve any sentence in connection with this case.

## CONCLUSION

38.     I have attached to this affidavit, as **Exhibit D**, the affidavit of DEA Special Agent Anthony Conte.  In his affidavit, Special Agent Conte summarizes the investigation of MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI's illegal activities and the evidence that resulted in the indictment in this case.

39.     This affidavit and the affidavit of Special Agent Conte were sworn to before a Magistrate Judge of the United States District Court for the Eastern District of Virginia, who is a person duly empowered to administer an oath for this purpose.

40.     I have reviewed the affidavit of Special Agent Conte and the evidence in this case, and I attest that the evidence is sufficient according to the laws of the United States of America to justify the committal for trial of MACAULEY, YAKUBU, EHIOBU, BROBBEY, and ANTWI for the offenses for which extradition is sought.

James R. Gillis
Assistant United States Attorney

Sworn to and subscribed before me
this 5th day of August, 2011.

HON. IVAN D. DAVIS
United States Magistrate Judge

-14-

## EXHIBIT LIST

**Exhibit A**        Certified Copy of Indictment

**Exhibit B-1**      Certified copy of arrest warrant for MACAULEY

**Exhibit B-2**      Certified copy of arrest warrant for YAKUBU

**Exhibit B-3**      Certified copy of arrest warrant for EHIOBU

**Exhibit B-4**      Certified copy of arrest warrant for BROBBEY

**Exhibit B-5**      Certified copy of arrest warrant for ANTWI

**Exhibit C**        Relevant Statutes

**Exhibit D**        Affidavit of DEA Special Agent Anthony Conte

**Attachment 1a**        Surveillance photograph of MACAULEY

**Attachment 1b**        Arrest photograph of MACAULEY

**Attachment 2a**        Surveillance photograph of EHIOBU

**Attachment 2b**        Arrest photograph of EHIOBU

**Attachment 3a**        Surveillance photograph of BROBBEY

**Attachment 3b**        Arrest photograph of BROBBEY

**Attachment 2a**        Surveillance photograph of EHIOBU

**Attachment 2b**        Arrest photograph of EHIOBU

**Attachment 4**         Arrest photograph of ANTWI

**Attachment 5**         Surveillance photograph of YAKUBU

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. 1:11cr199 |
| | ) Hon. James C. Cacheris |
| v. | ) |
| | ) |
| EDWARD MACAULEY, | ) Count One – Conspiracy to Import Heroin |
| a/k/a "Cudjoe Opoku," | ) (21 U.S.C. § 963) |
| (Counts 1-4) | ) |
| | ) |
| NURU [Last Name Unknown], | ) Count Two – Distribution for Purpose of |
| a/k/a "Ohehe" | ) Unlawful Importation of Heroin |
| (Counts 1-4) | ) (21 U.S.C. §§ 959 (a) & 960) |
| | ) |
| FRANK EHIOBE, | ) |
| (Counts 1 & 4) | ) Count Three – Distribution for Purpose of |
| | ) Unlawful Importation of Heroin |
| FRED OPPONG BROBBEY, | ) (21 U.S.C. §§ 959 (a) & 960) |
| (Counts 1, 3 & 4) | ) |
| | ) |
| WILLIAM ANDOH, | ) Count Four – Distribution for Purpose of |
| a/k/a "Willie," | ) Unlawful Importation of Heroin |
| (Counts 1, 3 & 4) | ) (21 U.S.C. §§ 959 (a) & 960) |
| | ) |
| THEOPHILUS AKWEI, | ) |
| (Counts 1, 4 & 5) | ) Count Five – Possession with Intent |
| | ) To Distribute Heroin |
| JOSEPH DUODO, and | ) (21 U.S.C. § 841) |
| (Counts 1, 4 & 5) | ) |
| | ) |
| MATILDA ANTWI, | ) Forfeiture Notice |
| (Counts 1 & 2) | ) (21 U.S.C. §§ 853 & 970) |
| | ) |
| Defendants | ) |

## INDICTMENT

April 2011 Term – At Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

GENERAL ALLEGATIONS

1.      EDWARD MACAULEY, a/k/a. "Cudjoe Opoku," is a resident of Ghana. MACAULEY is a leader of a Ghana-based heroin trafficking organization and is responsible for importing into the United States multiple kilograms of heroin.  The MACAULEY organization uses couriers aboard commercial airlines to smuggle heroin from Ghana to the United States.

2.      NURU [Last Name Unknown], a/k/a "Ohehe," is a resident of Ghana.  NURU arranges for and uses couriers in Ghana to transport heroin from Ghana to the United States. NURU sought and obtained MACAULEY's permission to use a courier to transport heroin from Ghana to the United States.

3.      FRANK EHIOBE is a resident of Ghana.  EHIOBE arranges for and uses couriers in Ghana to transport heroin from Ghana to the United States.  EHIOBE sought and obtained MACAULEY's permission to use a courier to transport heroin from Ghana to the United States.

4.      FRED OPPONG BROBBEY is a resident of Ghana.  BROBBEY is skilled at concealing heroin in suitcases used by MACAULEY organization couriers to transport heroin into the United States.  BROBBEY also concealed heroin in suitcases used by a courier for NURU and EHIOBE that was transported to the United States.

5.      WILLIAM ANDOH, a/k/a "Willie," is a citizen of Ghana and a resident of New York.  In or about December 2010, ANDOH was to receive a shipment of heroin from a courier who had been directed to ANDOH by MACAULEY.  ANDOH distributes heroin within the New York, NY, and Baltimore, MD, metropolitan areas.

-2-

6.      THEOPHILUS AKWEI is a citizen of Ghana and a resident of Maryland.  In or about February 2011, AKWEI received a shipment of heroin from a courier who had been directed to him by EHIOBE.

6.     THEOPHILUS AKWEI is a citizen of Ghana and a resident of Maryland.  In or about February 2011, AKWEI received a shipment of heroin from a courier who had been directed to him by EHIOBE.

7.     JOSEPH DUODO is a citizen of Ghana and a resident of Maryland.  In or about February 2011, DUODO received a shipment of heroin from a courier who had been directed to him by EHIOBE.

8.     MATILDA ANTWI is a citizen of Ghana and a resident of Alexandria, Virginia, in the Eastern District of Virginia.  ANTWI is a courier for the MACAULEY organization.

-3-

COUNT ONE

*Conspiracy to Import Heroin – 21 U.S.C. § 963*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations are incorporated here.

9.      From at least in or about September 2010 through at least February 2011, in the

Eastern District of Virginia and elsewhere, the defendants,

> EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
> NURU, a/k/a "Ohehe,"
> FRANK EHIOBE,
> FRED OPPONG BROBBEY,
> WILLIAM ANDOH, a/k/a "Willie,"
> THEOPHILUS AKWEI,
> JOSEPH DUODO, and
> MATILDA ANTWI,

and others known and unknown to the Grand Jury, conspired and agreed to commit the following

offenses against the United States:

a.      Knowingly, intentionally, and unlawfully to import a schedule I controlled

substance, that is, one kilogram or more of a mixture and substance containing a detectable

amount of heroin, into the United States from a place outside thereof, in violation of 21 U.S.C.

§§ 952(a), 960(a)(1) & 960(b)(1)(A);

b.      Knowingly, intentionally, and unlawfully to bring and possess on board an

aircraft arriving in the United States a schedule I controlled substance, that is, one kilogram or

more of a mixture and substance containing a detectable amount of heroin, not part of the cargo

entered in the manifest or part of the official supplies of the aircraft, in violation of 21 U.S.C.

§§ 955, 960(a)(2) & 960(b)(1)(A); and

-4-

c.      To distribute a schedule I controlled substance, that is, one kilogram or

more of a mixture and substance containing a detectable amount of heroin, intending and

knowing that such substance would be unlawfully imported into the United States, in violation of

21 U.S.C. §§ 959(a), 960(a)(3) & 960(b)(1)(A).

10.     In furtherance of this conspiracy and to accomplish its unlawful objects, the

defendants and their co-conspirators committed the following overt acts in the Eastern District of

Virginia and elsewhere:

*The September 2010 Shipment of Heroin*

a.      In or about September 2010, ANTWI was introduced to MACAULEY by

a co-conspirator. MACAULEY offered to pay ANTWI to smuggle heroin into the United States.

b.      In or about September 2010, MACAULEY met with ANTWI at a hotel in

Accra, Ghana, and gave her a quantity of heroin for importation into the United States.

MACAULEY also gave ANTWI the telephone number of an individual who would retrieve the

heroin from her once she arrived in the United States.

c.      On or about September 4, 2010, ANTWI, while in possession of

approximately 1.2 kilograms of heroin, attempted to depart Kotoka International Airport in

Ghana on United Airlines flight number 991, which was bound for Dulles International Airport

in the Eastern District of Virginia.

*The November 2010 Shipment of Heroin*

d.      On or about November 4, 2010, in Accra, Ghana, MACAULEY provided

a drug courier with a cell phone number to use to contact MACAULEY. Later that day,

MACAULEY explained to the courier that there were no drug detection machines at the Kotoka

-5-

International Airport but that the arrangement of the drugs in the bags carried by the courier was important.

        e.      On or about November 10, 2010, MACAULEY arranged for NURU to meet the drug courier at MACAULEY's house in Accra, Ghana. NURU and the courier traveled from there to another location where they met BROBBEY who showed the courier a brown carry-on bag. NURU explained that the courier would be traveling with this bag and that it would contain drugs. NURU told the courier that BROBBEY had been designing drug courier bags for NURU and others for some time.

        f.      On or about November 19, 2010, MACAULEY met the drug courier at MACAULEY's house in Accra, Ghana. MACAULEY told the courier that the courier's trip to transport the drugs would occur before November 24, 2010. MACAULEY told the courier that MACAULEY could not purchase the courier's plane ticket because MACAULEY had tied up in the United States approximately $350,000 from the sale of drugs in the United States. When the courier asked MACAULEY for the courier's passport, MACAULEY told the courier to get it from NURU.

        g.      On or about November 20, 2010, MACAULEY met the drug courier at MACAULEY's house in Accra, Ghana. MACAULEY told the courier that the courier's trip to transport the drugs would occur on November 26, 2010. MACAULEY told the courier to call NURU to obtain the courier's passport.

        h.      On or about November 22, 2010, NURU met with the drug courier in Accra, Ghana, and told him that a reservation had been made for the courier on United Airlines

-6-

flight number 991 departing on November 27, 2010, and that the carry-on bag containing drugs would be given to him at the Kotoka International Airport.

       i.     On or about November 23, 2010, NURU and BROBBEY met with the drug courier in Accra, Ghana, and showed the courier the carry-on bag that would contain the drugs the courier was to transport.

       j.     On or about November 27, 2010, NURU purchased the ticket for the drug courier and told the courier to prepare to travel on November 28, 2010.

       k.     On or about November 28, 2010, NURU met with the drug courier and a co-conspirator at the Kotoka International Airport. The co-conspirator told NURU that it was safe for the courier to check in for the flight. Later that day, before boarding the aircraft, the courier was given the carry-on bag containing approximately 1.4 kilograms of heroin that the courier was to transport to Dulles International Airport.

       l.     On or about November 29, 2010, NURU called the drug courier shortly after the courier had arrived at Dulles International Airport. NURU told the courier that someone was waiting to pick the courier up. Later that day, NURU called the courier, who was in the Eastern District of Virginia, and told the courier to rent a hotel room where someone would come to pick up the heroin. Still later that day, NURU and a co-conspirator had several conversations with the courier by telephone concerning delivery of the heroin.

       m.     On or about November 30, 2010, MACAULEY spoke by telephone with the drug courier, who was in the Eastern District of Virginia, and discussed delivery of the heroin. Later that day, NURU called the courier to ask where the heroin was located. Still later that day, BROBBEY called the courier to discuss the delivery of the heroin.

n.      On or about December 1, 2010, BROBBEY called the courier and told him to call the "boss," MACAULEY. BROBBEY told the courier that MACAULEY would send someone to pick up the heroin.

o.      On or about December 2, 2010, BROBBEY called the courier to discuss the delivery of the heroin. BROBBERY told the courier that NURU could not pay him until NURU knew where the heroin was located.

p.      On or about December 3, 2010, MACAULEY called the courier and gave him ANDOH's telephone number of (xxx) xxx-7658 so that the courier could call ANDOH and arrange delivery of the heroin. Thereafter, using telephone number (xxx) xxx-7658, ANDOH spoke with the courier regarding the delivery of the heroin.

q.      On or about December 16, 2010, NURU spoke with the courier who told NURU that the heroin was stored in a locker in the United States and that the courier could give NURU the key to the locker. Later that day, MACAULEY asked the courier if he had the key to the locker in the United States.

*The February 2011 Shipment of Heroin*

r.      On or about February 18, 2011, MACAULEY, EHIOBE, and a co-conspirator met with the courier at MACAULEY's house in Accra, Ghana. MACAULEY told EHIOBE that the courier was an associate of MACAULEY's and that he regarded the courier with confidence. MACAULEY, EHIOBE, and the courier also discussed that while the courier was in the United States in February transporting drugs, the courier could meet with an associate of MACAULEY's to deliver the November 2010 shipment of heroin. MACAULEY also called · NURU to tell him that the courier would be traveling to the United States.

-8-

s.     On or about February 19, 2011, MACAULEY, BROBBEY, and other co-conspirators met with the courier in Accra, Ghana, and told him that a ticket had been purchased for him on United Airlines flight number 991 departing for Dulles International Airport on February 20, 2011, and that BROBBEY would make the carry-on bag for transporting the heroin.

t.     On or about February 20, 2011, after the courier had checked in for United Airlines flight number 991, an associate of EHIOBE's met with the courier at the Kotoka International Airport in Accra, Ghana, and gave the courier a carry-on bag containing approximately 989 grams of heroin, which was inside a hidden compartment of the bag.

u.     On or about the morning of February 21, 2011, after the courier had arrived at Dulles International Airport, EHIOBE called the courier and told him that EHIOBE would call the person the courier was to meet to deliver the heroin.  Shortly thereafter, the courier received a text message from EHIOBE with the telephone number (xxx) xxx-0151.  Later, the courier received several calls from a co-conspirator, "Senu," at telephone number (xxx) xxx-0151, and they discussed the delivery of the heroin.  During the same time, EHIOBE and the courier spoke by telephone several times concerning the delivery of the carry-on bag containing the heroin to "Senu."  Ultimately, "Senu" and EHIOBE each called the courier and told him that "Senu" would not meet with the courier.

v.     On or about the afternoon of February 21, 2011, MACAULEY called the courier and told him that MACAULEY would arrange to have someone pick up the carry-on bag containing the heroin if EHIOBE did not do so.  Later, EHIOBE called the courier and told him that "Senu" was sending someone to pick up the carry-on bag.  Shortly thereafter, a co-conspirator called the courier from telephone number (xxx) xxx-9361 and asked the courier for

the address of the hotel where the courier was staying. Still later, EHIOBE called the courier and told him that he had spoken to the co-conspirator and that the co-conspirator was on his way to pick up the carry-on bag.

w.     On or about the evening of February 21, 2011, DUODU drove with AKWEI to the hotel where the courier was staying. Shortly afterward, the co-conspirator called the courier from telephone number (xxx) xxx-9361 and told him that he had arrived at the hotel. DUODU and AKWEI met the courier in the car in the hotel parking lot and called EHIOBE to discuss the delivery of the heroin. Later, the courier came from his room at the hotel and placed the carry-on bag containing the heroin in the car being driven by DUODU. Still later, EHIOBE called the courier, and the courier told EHIOBE that he had delivered the heroin.

x.     On or about February 22, 2011, ANDOH called the courier and discussed the payment of the courier's expenses for transporting the heroin. ANDOH told the courier that he should ask MACAULEY for the money.

(In violation of Title 21, United States Code, Section 963.)

COUNT TWO

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about September 4, 2010, in the Eastern District of Virginia and elsewhere, the defendants,

EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
NURU, a/k/a "Ohehe," and
MATILDA ANTWI,

distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States. (In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(1)(A) and Title 18, United States Code, Section 2).

-11-

COUNT THREE

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about November 29, 2010, in the Eastern District of Virginia and elsewhere, the defendants,

EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
NURU, a/k/a "Ohehe,"
FRED OPPONG BROBBEY, and
WILLIAM ANDOH, a/k/a "Willie,"

distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States. (In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(1)(A) and Title 18, United States Code, Section 2).

COUNT FOUR

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about February 21, 2011, in the Eastern District of Virginia and elsewhere, the defendants,

> EDWARD MACAULEY, a/k/a "Cudjoe Opoku,"
> NURU, a/k/a "Ohehe,"
> FRANK EHIOBE,
> FRED OPPONG BROBBEY,
> WILLIAM ANDOH, a/k/a "Willie,"
> THEOPHILUS AKWEI, and
> JOSEPH DUODO,

distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, 100 grams or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States. (In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(2)(A) and Title 18, United States Code, Section 2).

-13-

COUNT FIVE

*Possession with Intent to Distribute Heroin – 21 U.S.C. § 841*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of the General Allegations and paragraph 10 of Count One are incorporated here.

On or about February 21, 2011, in the Eastern District of Virginia and elsewhere, the defendants,

THEOPHILUS AKWEI, and
JOSEPH DUODO,

possessed with intent to distribute a schedule I controlled substance, that is, 100 grams or more of a mixture and substance containing a detectable amount of heroin.

(In violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(B)(i) and Title 18, United States Code, Section 2).

-14-

NOTICE

*Forfeiture – 21 U.S.C. §§ 853 & 970*

Pursuant to FED. R. CRIM. P. 32.2(a), the defendants are hereby notified that, if convicted

of the offenses charged in this indictment, they shall forfeit to the United States any property

constituting or derived from any proceeds the defendants and their co-conspirators obtained,

directly or indirectly, as the result of such violations, or substitute assets therefor, up to and

including a sum of money equal to $710,000 in United States currency, which includes the

estimated U.S. value of the heroin, and any of the defendants' property used, or intended to be

used, in any manner or part, to commit or to facilitate the commission of such violations.

(Pursuant to Title 21, United States Code, Sections 853 and 970; Title 18, United States Code,

Section 982; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal

Rules of Criminal Procedure.)

A TRUE BILL Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____

FOREPERSON

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
James P. Gillis
Assistant United States Attorney

A TRUE COPY TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

-15-

# EXHIBIT B-1

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

UNDER SEAL

| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 1:11cr199 |
| Edward Macauley | ) | |
| | ) | |
| _Defendant_ | ) | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_   Edward Macauley
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:
Conspiracy to Import Heroin; and
Distribution for Purpose of Unlawful Importation of Heroin.

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _[signature]_

Date: 4/28/11   DEPUTY CLERK

_[signature]_
_Issuing officer's signature_

City and state:   Alexandria, VA

Kathy Roberts – Deputy Clerk
_Printed name and title_

---

**INFORMATION COPY ONLY**

**NOTICE: BEFORE ARREST, VALIDATE THROUGH NCIC. ORIGINAL HELD BY U.S. MARSHAL.**

## Return

This warrant was received on _(date)_ _____, and the person was arrested on _(date)_ _____
at _(city and state)_ _____

Date: _____

_____
_Arresting officer's signature_

_____
_Printed name and title_

# EXHIBIT B-2

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Virginia

# UNDER SEAL

United States of America
v.

Nuru "Last Name Unknown,"
a.k.a. "Ohehe"

_____
Defendant

)
)
)
)
)
)

Case No. 1:11cr199

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Nuru "Last Name Unknown," a.k.a. "Ohehe"
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:
Conspiracy to Import Heroin; and
Distribution for Purpose of Unlawful Importation of Heroin.

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

Date: 4/28/11

_____
Issuing officer's signature

City and state:   Alexandria, VA

Kathy Roberts - Deputy Clerk
*Printed name and title*

INFORMATION COPY ONLY

NOTICE: BEFORE ARREST, VALIDATE THROUGH NCIC. ORIGINAL HELD BY U.S. MARSHAL.

## Return

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

_____
Arresting officer's signature

_____
Printed name and title

# EXHIBIT B-3

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

# UNDER SEAL

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Frank Ehiobe | )  Case No. 1:11cr199 |
| | ) |
| Defendant | ) |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*  Frank Ehiobe                                                                                           ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment          ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:
Conspiracy to Import Heroin; and
Distribution for Purpose of Unlawful Importation of Heroin.

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

Date:  4/28/11

City and state:  Alexandria, VA

_____
*Issuing officer's signature*

Kathy Roberts— Deputy Clerk
*Printed name and title*

### Return

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

INFORMATION COPY ONLY

NOTICE: BEFORE ARREST, VALIDATE THROUGH NCIC. ORIGINAL HELD BY U.S. MARSHAL.

# EXHIBIT B-4

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

# UNDER SEAL

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Fred Oppong Brobbey | )  Case No. 1:11cr199 |
| | ) |
| | ) |
| Defendant | ) |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     Fred Oppong Brobbey                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:
Conspiracy to Import Heroin; and
Distribution for Purpose of Unlawful Importation of Heroin.

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

Date: _4/28/11_

_____
*Issuing officer's signature*

Kathy Roberts—Deputy Clerk
*Printed name and title*

City and state:     Alexandria, VA

### Return

INFORMATION COPY ONLY

NOTICE: BEFORE ARREST, VALIDATE
THROUGH NCIC. ORIGINAL
HELD BY U.S. MARSHAL

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

# EXHIBIT B-5

AO 442 (Rev. 01/09)  Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

# UNDER SEAL

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Matilda Antwi | ) | Case No. 1:11cr199 |
| | ) | |
| | ) | |
| Defendant | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     Matilda Antwi

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint

☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:
Conspiracy to Import Heroin; and
Distribution for Purpose of Unlawful Importation of Heroin.

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT
BY _____
DEPUTY CLERK

Date:  4/28/11

_____
*Issuing officer's signature*

Kathy Roberts - Deputy Clerk

City and state:    Alexandria, VA

_____
*Printed name and title*

## Return

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____

at *(city and state)* _____

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

"HELD BY U.S. MARSHAL.
THROUGH NCIC, ORIGINAL
NOTICE: BEFORE ARREST, VALIDATE
COPY ONLY
INFORMATION

COPY

# EXHIBIT C

# EXHIBIT C

Exhibit C contains the applicable portions of statutes describing the offenses with which the defendant is charged, the statute of limitations, and the penalties the defendant faces if convicted. Ellipses and asterisks are used to indicate portions of the statutes which are omitted because these portions do not apply to the case against the defendant.

1

**Title 21, United States Code, Section 963. Attempt and conspiracy.**

Any person who attempts or conspires to commit any offense defined in this subchapter [which includes 21 U.S.C. Sections 952, 955, 959, and 960] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**Title 21, United States Code, Section 960. Prohibited Acts.**

(a)  Unlawful Acts

Any person who--

(1) contrary to section 952 . . . of this title, knowingly or intentionally imports or exports a controlled substance,

(2) contrary to section 955 of this title, knowingly or intentionally brings or possesses on board a vessel, aircraft, or vehicle a controlled substance, or

(3) contrary to section 959 of this title, manufactures, possesses with intent to distribute, or distributes a controlled substance,

shall be punished as provided in subsection (b) of this section.

(b)  Penalties

(1) In the case of a violation of subsection (a) of this section involving--

(A) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

\* \* \*

. . . . the person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life . . . .

\* \* \*

(2) In the case of a violation of subsection (a) of this section involving --

(A) 100 grams or more of a  mixture or substance containing a detectable amount of heroin;

. . . . the person committing such violation shall be sentenced to a term of imprisonment of not less than 5 years and not more than 40 years . . . .

3

**Title 21, United States Code, Section 952. Importation of controlled substances.**

\* \* \*

(a) Controlled substances in schedule I . . .

It shall be unlawful . . . to import into the United States from any place outside thereof, any controlled substance in schedule I . . . of subchapter I of this chapter . . . .

**Title 21, United States Code, Section 812. Schedules of controlled substances.**

(a)  Establishment

    There are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V.  Such schedules shall initially consist of the substances listed in this section.

\* \* \*

(c) Initial schedule of controlled substances

\* \* \*

Schedule I

\* \* \*

(b) Unless specifically excepted or unless listed in another schedule, any of the following opium derivatives, their salts, isomers, and salts of isomers whenever the existence of such salts, isomers,  and salts of isomers is possible within the specific chemical designation:

\* \* \*

(10) Heroin.

\* \* \*

4

**Title 21, United States Code, Section 955.   Possession on board vessels, etc. arriving in or departing from the United States.**

> It shall be unlawful for any person to bring or possess on board any vessel or aircraft . . . arriving in or departing from the United States . . . , a controlled substance in schedule I . . . , unless such substance or drug is a part of the cargo entered in the manifest or part of the official supplies of the vessel, aircraft, or vehicle. . .

**Title 21, United States Code, Section 959(a).   Possession, manufacture, or distribution of controlled substance.**

(a) Manufacture or distribution for purpose of unlawful importation

> It shall be unlawful for any person to manufacture or distribute a controlled substance in schedule I . . . . --
>
> (1) intending that such substance or chemical will be unlawfully imported into the United States . . . ; or
>
> (2) knowing that such substance or chemical will be unlawfully imported into the United States . . . .

5

**Title 18, United States Code, Section 3282.   Offense not capital**

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

**Title 18, United States Code, Section 2-Principals**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

# EXHIBIT D